UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH S., § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> COMMISSIONER OF SOCIAL SECURITY, § <br> § <br> Defendant. § | Case # 1:19-cv-1592-DB <br><br> MEMORANDUM DECISION <br> AND ORDER |

## INTRODUCTION

Plaintiff Joseph S. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act.. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 22).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 17. Plaintiff also filed a reply brief. *See* ECF No. 19. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is **GRANTED**, the Commissioner's motion for judgment on the pleadings (ECF No. 17) is **DENIED**, and this matter is **REMANDED** to the Commissioner for further administrative proceedings as set forth below.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on May 9, 2016, alleging disability beginning September 1, 2012 (the disability onset date), due to (among other things)

uncontrolled Type I diabetes; neuropathy in both hands and feet; chronic pain due to torn discs in back and neck; hypertension and high cholesterol; and history of femur fracture. Transcript ("Tr.") 181-95, 214. Plaintiff's claims were denied initially on August 12, 2016, after which he requested an administrative hearing. Tr. 15. On August 7, 2018, Administrative Law Judge Bryce Baird (the "ALJ") presided over a hearing in Buffalo, New York. Tr. 15, 34-84. Plaintiff appeared and testified at the hearing and was represented by Jeanne Murray, an attorney. Tr. 15. Jay Steinbrenner, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on December 5, 2018, finding that Plaintiff was not disabled. Tr. 15-27. On October 4, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's December 5, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.     The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his December 5, 2018 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016;

2. The claimant has not engaged in substantial gainful activity since September 1, 2012, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.);

3. The claimant has the following severe impairments: diabetes with neuropathy, mild bilateral degenerative joint disease of the acromioclavicular joints, major depressive disorder, mild cognitive disorder, lumbar degenerative disc disease. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[1] because he is able to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. The claimant is able to occasionally use hand controls. The claimant is able to occasionally use foot controls. The claimant is able to occasionally climb ramps or stairs but never climb ladders ropes or scaffolds. The claimant is able to occasionally balance, stoop, kneel, crouch but never crawl. The claimant is able to frequently reach in all directions including overhead with both upper extremities. The claimant is able to frequently handle (including gross manipulation), finger (including fine manipulation), and feel. The claimant can perform work with no exposure to extreme heat or cold and with no concentrated exposure to pulmonary irritants such as odors, fumes, dusts, gasses or poor ventilation. The claimant can never be exposed to excessive vibration or hazards such as unprotected heights and

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

...

moving machinery. The claimant is limited to work involving only simple and routine tasks that can be learned after a short demonstration or within 30 days. The claimant can perform work where the job does not require driving a vehicle and does not require travel to unfamiliar places. The claimant can perform work with occasional interaction with the public and coworkers, work that does not require teamwork (such as on a production line) and work that requires doing the same tasks every day with little variation in location, hours, or tasks;

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965);

7. The claimant was born on August 22, 1974 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a);

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 15-27.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on May 9, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 27. The ALJ also determined that based on the application for supplemental security benefits protectively filed on May 9, 2016, the claimant is not disabled under section 1614(a)(3)(A) of the Act. *Id*.

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff argues that the ALJ's RFC was not supported by substantial evidence, but rather by "his own lay creation," because his rejection of the treating medical source opinions was not supported by good reasons. *See* ECF No.10-1 at 17-

29. Specifically, Plaintiff alleges that the ALJ improperly evaluated the treating source opinions of neuropsychologist Tatyana Raby, Ph.D. ("Dr. Raby"), and endocrinologist Paresh Dandona, M.D. ("Dr. Dandona"), "without offering clear good reason," or proper assessment of the treating physician factors, and relied more heavily on the opinion of consultative examiner Samuel Balderman, M.D. ("Dr. Balderman"). *See id*. Plaintiff further argues that the ALJ's assessment of Plaintiff's subjective complaints was based on mischaracterizations and not adequately supported. *See id*. at 30-33.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the entire record, including the treatment records, the objective clinical evidence, the opinions of Plaintiff's treating physicians, and Plaintiff's testimony and activities, the Court finds that the ALJ did not properly assess Plaintiff's cognitive difficulties associated with his uncontrolled Type I diabetes. The medical evidence established that Plaintiff experienced frequent episodes of hyperglycemia followed by hypoglycemia, which caused him to feel "mentally foggy" and "space[d] out" following these episodes. Although the ALJ found "mild cognitive disorder" as a severe impairment (Tr. 18) and purported to account for Plaintiff's mental limitations, including his poor memory and mild cognitive disorder, in the RFC (Tr. 23), the Court finds that ALJ's assignment of weight to the various medical opinions was not clearly supported by the record.

For example, the ALJ gave "significant" weight to Dr. Raby's opinion that Plaintiff was not disabled from a cognitive standpoint, but he gave "little" weight to her statement that Plaintiff's diabetic management can cause tardiness and absenteeism. Tr. 24. The ALJ also did not adequately consider how Plaintiff's attention to addressing his glucose fluctuations and his need to potentially stop work to attend to his diabetic treatment might impact his absenteeism and productivity. Furthermore, there was no testimony or clear evidence regarding how long Plaintiff was affected by symptoms of either hyperglycemic or hypoglycemic episodes. Accordingly, the Court finds that the ALJ's RFC finding is not supported by substantial evidence, and remand is warranted.

The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2), 416.927(c)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).[2]

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether

---

[2] The Court notes a recent change to the Administration's regulations regarding the consideration of opinion evidence will eliminate application of this "treating physician rule" for claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5848-49 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 and 416). For the purposes of this case, however, the prior version of the regulation applies. *See Smith v. Colvin*, No. 16-CV-6150L, 2018 WL 1210891, at *2 (W.D.N.Y. Mar. 8, 2018).

the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

The medical evidence is rife with evidence of Plaintiff's efforts to control his diabetes, including daily actions Plaintiff was required to perform, such as testing, medication adjustments, dietary monitoring, and counting. Tr. 567, 56, 57. For example, in July 16, 2014, endocrinologist Vladimir Bakalov, M.D. ("Dr. Bakalov"), assessed poor diabetic metabolic control and started Plaintiff on a new insulin regimen and gabapentin for polyneuropathy. Tr. 308. Despite the new regimen, on August 29, 2014, Plaintiff complained that he did "not feel well" and had increased polydipsia and polyuria. Tr. 305.

On August 25, 2016, Glenell Smith, M.D. ("Dr. Smith"), at the Wellness Medical Practice, again noted Plaintiff's "very labile diabetes," in spite of extensive counseling, insulin dosage manipulation, and dietary discussions. Tr. 619. Dr. Smith noted that there was little improvement in the lability of Plaintiff's glucose control even though it was evident that Plaintiff was "trying hard to do what he was instructed to do." Tr. 619. In August 2016, Dr. Smith referred Plaintiff to Dr. Dandona, a "very esteemed endocrinologist;" however, Dr. Dandona was unable to see Plaintiff until late December. Tr. 619, 622.

On October 7, 2016, Plaintiff told Dr. Smith that "his glucose was still fluctuating wildly," and Dr. Smith added the "new insulin Tresiba" to Plaintiff's regimen. Tr. 622-623. On July 18, 2017, Rajeev Sharma, M.D., ("Dr. Sharma"), of UBMD Internal Medicine, noted that Plaintiff had many episodes of hypoglycemia despite using an insulin pump. Tr. 574, 580, 1007. Plaintiff's wife reported that he had "hypoglycemic unawareness" and sometimes had hypoglycemic symptoms

below 90 mg%. Tr. 1007. Dr. Sharma observed that Plaintiff was unaware of the 15-15 rule.[3] *Id*. Plaintiff's in-office glucose test was 359. Tr. 1009. Dr. Sharma assessed uncontrolled Type I diabetes with nephropathy and encouraged Plaintiff to check his glucose more often. Tr. 580.

On October 23, 2017, Dr. Smith attributed Plaintiff's nocturia, fatigue and weight loss to his diabetes. Tr. 646. On October 31, 2017, Dr. Sharma reported there was no set pattern for blood glucose levels in spite of "almost good" eating. Tr. 567. Plaintiff's in-office glucose reading was 325, and his Hemoglobin A1C[4] was 11.7%. Tr. 569. Dr. Sharma stated that Plaintiff had "roller coaster diabetes control" with many hyperglycemia episodes. Tr. 570. Plaintiff was on an insulin pump, and Dr. Sharma advised Plaintiff to increase his pump's basal rate. *Id*. Plaintiff stated his desire to see Dr. Dandona, and Dr. Sharma indicated that she was willing to have Plaintiff see Dr. Dandona to "explore other therapies." *Id*.

In November 2017, Dr. Raby noted that Plaintiff had poorly controlled Type I diabetes with readings from 30 to above 600. Tr. 667. Plaintiff's wife reported that he "appeared confused at times, providing implausible answers to questions," which "seemed to be related to blood sugar running low." *Id*. After conducting neuropsychological testing, Dr. Raby noted that Plaintiff's "cognitive profile was for the most part unremarkable," but she stated that his "[c]urrent metabolic instabilities might further contribute to his problems with concentration and learning." Tr. 683. On November 20, 2017, Dr. Dandona reported Plaintiff's blood glucose was too high for the in-office machine to read. Tr. 461. On April 25, 2018, Priya Mohanty, M.D. ("Dr. Mohanty"), of UBMD

---

[3] According to the Centers for Disease Control and Prevention ("CDC"), patients with low blood sugar (between 55-69 mg/dL) should have 15 grams of carbs and check their blood sugar after 15 minutes. Patients are instructed to repeat these steps until their blood sugar levels reach their target range. *See* CDC website, https://www.cdc.gov/diabetes/basics/low-blood-sugar-treatment.html (last visited July 20, 2021).

[4] The hemoglobin test A1C ("HbA1C" or simply "A1C") is a blood test that measures average blood sugar levels over the past three months. The A1C goal for most people with diabetes is 7% or less, which corresponds to an estimated average glucose ("eAG") of 154. An A1C of 10% corresponds to an eAG of 240. *See* CDC website, https://www.cdc.gov/diabetes/managing/managing-blood-sugar/a1c.html# (last visited July 20, 2021).

Physicians Group, adjusted Plaintiff's basal levels to help improve his hyperglycemia and prevent hypoglycemia. Tr. 1052. Dr. Mohanty also recommended that Plaintiff check his levels four times a day and try an SNRI (serotonin-norepinephrine reuptake inhibitor) for his worsened neuropathy. Tr. 1052.

The ALJ's gave Dr. Raby's "vague absenteeism opinion" little weight, purportedly because it was inconsistent with the opinion of consultative examiner Dr. Balderman. Tr. 24. The ALJ diminished Dr. Raby's statement that Plaintiff's diabetic management can cause tardiness and absenteeism, remarking that "she qualified this statement as a general statement about medical management rather than something specific to the claimant." *Id*. The Court does not agree with the ALJ's interpretation of Dr. Raby's statement. Dr. Raby initially evaluated Plaintiff on November 20, 2017 (Tr. 667-668), and thereafter performed extensive neuropsychiatric testing on January 23, 2018 (Tr. 680-84). Dr. Raby examined Plaintiff; reviewed his medical history and diagnostic reports; and made direct and individualized comments regarding Plaintiff's limitations and specific needs based on her assessment. Tr. 684.

Based on her assessment of Plaintiff's functioning and medical history, Dr. Raby concluded that Plaintiff's efforts to get his blood glucose under control was a time-consuming task that could cause tardiness and absenteeism. Tr. 683-84. These were not just "general statements," as the ALJ stated in his decision. Tr. 24. Rather, Dr. Raby's opinion was specific to Plaintiff, as well as consistent with his history of uncontrolled Type I diabetes, and time needed to check and manage his diabetic symptoms, as discussed above. Furthermore, the VE testified that employers would generally allow 15% off-task time, which includes unscheduled breaks. Tr. 80-81. He also testified that a worker needed to attend a minimum 90% of scheduled work time and an attendance rate of less 90% "would not be tolerated indefinitely." Tr. 81. Based on the foregoing, Dr. Raby had credible concerns about Plaintiff's potential absenteeism, which would impact whether

Plaintiff could maintain adequate on-task and attendance behavior to maintain competitive employment. Accordingly, the ALJ's assignment of little weight to Dr. Raby's absenteeism opinion was not supported by the evidence.

Although the ALJ correctly noted that Dr. Raby's absenteeism opinion was vague, other evidence supported Dr. Raby's assessment that Plaintiff needed time to check and test his glucose levels to gain control over his fluctuations. Tr. 580, 1052. For example, Dr. Dandona opined that Plaintiff was unable to perform a full eight hours of work activity because he needed to take breaks during the day and would be absent four days a month. Tr. 1104-06. While there is nothing in the record indicating how much time it might take for Plaintiff to regain control of his blood glucose levels using the "15-15 rule" as recommended by Dr. Sharma, given Plaintiff's history, it is reasonable to conclude that following this rule could lead to off-task time. Furthermore, the ALJ had the opportunity to question Plaintiff regarding how often he tested and how long it took so as to develop a more detailed picture of whether Plaintiff's need to treat his diabetes would have exceeded the threshold standards set out by the ALJ.

The ALJ's assessment of treating endocrinologist Dr. Dandona's opinion is similarly unsupported. As noted above, Dr. Dandona opined that Plaintiff was unable to perform a full eight hours of work activity; would be absent four days a month; needed to recline during the day and take breaks to walk around and elevate his legs with prolonged sitting; and was able to lift and carry less than ten pounds. Tr. 1104-06. The ALJ assigned Dr. Dandona's medical opinion "little" weight purportedly because it was inconsistent with the opinion of consultative examiner Dr. Balderman, the medical evidence of record, and Plaintiff's own testimony about his abilities of daily living, as well as the "check-box" form's lack of enough narrative detail. Tr. 24-25. However, the ALJ did not explain what other medical evidence was so contrary to Dr. Dandona's medical

opinion; nor did his analysis reflect adequate consideration of the treating physician factors recited above. *See id*.

First, the ALJ failed to address Dr. Dandona's professional qualifications or treating relationship with Plaintiff. The record describes Dr. Dandona as a "very esteemed" endocrinologist, "involved in extensive endocrine research." Tr. 619. Indeed, several of Plaintiff's doctors—even other endocrinologists—recommended that Plaintiff consult with Dr. Dandona. Tr. 619, 570. Dr. Balderman's specialty, on the other hand, is thoracic surgery. Tr. 389. Furthermore, although Dr. Balderman addressed Plaintiff's diabetic neuropathy, his opinion mainly focused on Plaintiff's musculoskeletal issues with little mention of Plaintiff's difficulties controlling his glucose levels, or his cognitive issues. Tr. 388-89.

Second, Dr. Balderman's July 2016 opinion (to which the ALJ afforded "reduced" weight) was based on a single (and, arguably, now-dated) examination, while Dr. Dandona had been treating Plaintiff since November 2017 and saw him every two to three months. Tr. 1103. Third, Dr. Balderman's opinion was not inconsistent with Dr. Dandona's opinion to such a degree that the ALJ should afford Dr. Dandona's opinion little weight when compared to Dr. Balderman's opinion, which assessed limitations in areas like walking, carrying and climbing due to Plaintiff's diabetic neuropathy. Fourth, Dr. Dandona's opinion was supported by consistency, as well as other medical evidence of record. Plaintiff routinely complained of fatigue and diabetic symptoms, including neuropathy, which both Dr. Smith and Dr. Dandona's opinions affirmed. Objective clinical evidence showed that Plaintiff had difficulty controlling his diabetes which created a "roller coaster" affect or "good and bad days," as Dr. Dandona opined. Because the ALJ offered no specific medical evidence to indicate how Dr. Dandona's medical opinion was inconsistent with the other evidence of record, the Court finds the ALJ's assessment of Dr. Dandona's opinion unclear and not supported by substantial evidence.

Finally, the ALJ offered Plaintiff's daily activities as evidence to diminish the weight of Dr. Dandona's opinion. This, too, is not substantially supported. Plaintiff testified that he changed position during the day and found lying down eased symptoms, not unlike what Dr. Dandona assessed. Tr. 45, 54, 60. 62, 67, 71. Plaintiff also testified, and records indicate, that he struggled to perform daily activities consistently and his efforts to golf, do a handful of work projects, shop or perform household chores were done on a very infrequent basis, with breaks or recovery time. Tr. 672, 976, 42, 45, 54-55, 62, 65, 71. Although the ALJ cited examples of activities such as roofing a shed, hitting a golf ball, painting, sweeping, vacuuming, performing yardwork, driving a car, and handy-man jobs, the medical evidence and testimony clearly reflect that Plaintiff performed these activities on an inconsistent basis and not on a level that equated to full-time work. Further, Plaintiff testified he took breaks to perform even basic household chores, spread them out, and required either "recovery" time or found that he "paid for it" afterwards. Plaintiff testified that he only did handy-man jobs for friends and family because they were understanding of his needs and he did this "maybe three, four times a year." Tr. 42, 45.

Based on the foregoing, the Court finds that the ALJ failed to properly evaluate the treating opinions of Drs. Raby and Dandona, and his articulated reasons for rejecting their opinions were unsupported. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) ("[A]n ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion."); *see also Smith v. Colvin*, 218 F.Supp.3d 168, 174 (E.D.N.Y. 2016) (finding the ALJ erred by elevating his personal view of the medical evidence over the treating physician's opinion); *Oatman v. Comm'r of Soc. Sec.*, 2014 WL 4384986, at *6 (N.D.N.Y. Sept. 4, 2014) (finding the ALJ improperly made a medical determination and set his own expertise against that of the treating physician when he asserted "there is nothing in [the treating physician's] records documenting that the claimant has any

problems sitting" to reject the physician's opinion that Plaintiff could not sit for six hours in a work) (citations omitted).

Because the ALJ diminished the weight given to all of the medical opinions of record, both the physical and mental health opinions, any meaningful review of the RFC is frustrated because there is no way to tell why the ALJ formulated the RFC that he did. *See Jones v. Comm'r of Soc. Sec.*, No. 1:18-CV-0526 (W.D.N.Y. July 8, 2019); Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (Remand may be appropriate where an ALJ fails to assess Plaintiff's "capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.") In other words, "the ALJ must simply explain the link between his RFC assessment and the record evidence supporting that assessment." *Paul v. Colvin*, No. 15-CV-310, 2016 WL 6275231, at *2 (W.D.N.Y. Oct. 27, 2016).

This is not a case in which Plaintiff had only minor impairments such that the ALJ "was within [his] discretion to make a 'common sense judgment' concerning [Plaintiff's] limitations, and no medical opinion evidence was necessary." *Lilley v. Berryhill*, 307 F.Supp.3d 157, 161 (W.D.N.Y. 2018). "It was necessary for the ALJ to rely upon a medical source's opinion in considering the limitations, if any, associated with this impairment." *See Perkins v. Berryhill*, No. 17-CV-6327-FPG, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018) (ALJ cannot render a common-sense judgment about a claimant's functional capacity where the record "contain[s] complex medical findings and do[es] not suggest only minor impairment).

For all these reasons, this case is remanded for proper consideration of the medical opinion evidence, as set forth in this opinion.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 17) is **DENIED**, and this matter

is **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE